**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**JONITHAN CHAPMAN**, individually and on behalf of all others similarly situated,

Plaintiff,

v.

**BAKER TILLY ADVISORY GROUP, LP**,

Defendant.

Case No. _______________

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiff Jonithan Chapman ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendant Baker Tilly Advisory Group, LP ("Defendant" or "Baker Tilly"), and alleges the following based upon personal knowledge with respect to Plaintiff and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters.

## SUMMARY OF THE CASE

1. Plaintiff brings this class action against Defendant for its failure to implement adequate and reasonable data security measures—including its failure to ensure that the third-party service providers to which it entrusted sensitive data used reasonable safeguards—to protect the personally identifiable information ("PII" or "Private Information") of Plaintiff and Class Members—Defendant's customers—from unauthorized access, resulting in a data breach occurring on or about September 2, 2026 (the "Data Breach").

2. Baker Tilly is one of the largest tax and business advisory firms in the United States, with more than 100 offices nationwide. Defendant provides tax and business advisory services to its customers, including tax preparation, financial consulting, business advisory, cybersecurity

advisory, and business management services for businesses, nonprofit organizations, government agencies, and individuals.[1] In the ordinary course of its business, Defendant collects, processes, and maintains highly sensitive PII—including names, Social Security numbers, dates of birth, driver's license information, addresses, contact information, and financial information—belonging to its customers.

3. On or about September 2, 2026, an unauthorized actor obtained access to information maintained by Defendant on a platform operated by a third-party service provider. In its Notice of Data Breach dated November 9, 2026 (the "Notice"), Defendant states that it discovered the potential cybersecurity incident on September 6, 2026, and that it completed its review of the affected data on October 28, 2026.[2] Defendant has admitted that the unauthorized actor obtained data relating to its customers, whom the Notice calls "certain Baker Tilly clients."

4. The PII compromised in the Data Breach includes, at a minimum, names, dates of birth, and Social Security numbers—the data elements Defendant has confirmed were exposed as to Plaintiff—and, upon information and belief, also includes addresses, driver's license information, contact information, and financial information. Upon information and belief, the Data Breach affected approximately 195,512 individuals.

5. Defendant did not begin notifying affected individuals until it issued notice letters dated November 9, 2026—sixty-four days after it discovered the incident and sixty-eight days after the reported breach date. Defendant's delay left Plaintiff and Class Members exposed to a

---

[1] *See* Baker Tilly, https://www.bakertilly.com/ (last visited Nov. 16, 2026).
[2] *See* Baker Tilly Advisory Group, LP, Sample Notice of Data Breach (Nov. 9, 2026), submitted to the Office of the California Attorney General, https://oag.ca.gov/system/files/Baker%20Tilly%20-%20Sample%20Individual%20Notice.pdf (last visited Nov. 16, 2026). Unless otherwise noted, the facts in this Complaint concerning the Data Breach and Defendant's response are drawn from the Notice.

prolonged period of heightened risk during which their compromised PII could be, and upon information and belief was, exploited without their knowledge.

6. Under New York law, a business that owns or licenses computerized data including private information is required to notify affected persons "in the most expedient time possible and without unreasonable delay" and, in any event, within thirty days after the breach has been discovered.[3] Defendant discovered the Data Breach on September 6, 2026, and did not issue notice until November 9, 2026—sixty-four days later—in apparent violation of this statutory deadline.

7. The Data Breach was a direct result of Defendant's failure to implement adequate and reasonable data security practices and procedures to protect the PII entrusted to it, despite its obligation to do so and despite its holding itself out to the market as an expert in cybersecurity and third-party vendor risk management. Upon information and belief, Defendant failed to adequately vet, monitor, and supervise the third-party service provider whose platform was compromised; failed to encrypt PII at rest and in transit; failed to implement adequate access controls and multifactor authentication; failed to deploy sufficient intrusion detection and monitoring systems; failed to limit the PII it shared with and retained on third-party platforms; and failed to maintain an adequate incident response plan.

8. As a result of the Data Breach, Plaintiff and Class Members have suffered and will continue to suffer damages, including but not limited to: (a) the compromise, publication, theft, and unauthorized use of their PII; (b) out-of-pocket expenses associated with the prevention, detection, recovery, and remediation of identity theft and fraud; (c) lost opportunity costs and the expenditure of time associated with attempting to mitigate the consequences of the Data Breach; (d) the diminished value of their PII; (e) the loss of the benefit of the bargain they struck when

[3] *See* N.Y. Gen. Bus. Law § 899-aa(2).

they provided their PII in exchange for services that were to include the safeguarding of that information; (f) anxiety, emotional distress, and loss of privacy; (g) the continued and ongoing risk to their PII, which remains in Defendant's possession and is subject to further breaches; and (h) future costs that will be expended to prevent, detect, contest, remediate, and repair the consequences of the Data Breach for the remainder of their lives.

9. Plaintiff seeks to remedy these harms on behalf of himself and all similarly situated individuals by asserting claims for negligence, negligence per se, breach of implied contract, unjust enrichment, and declaratory and injunctive relief.

## PARTIES

10. Plaintiff Jonithan Chapman is a natural person and citizen of the State of Tennessee. Plaintiff resides in Cleveland, Tennessee, and is domiciled in Tennessee, where he intends to remain. Plaintiff is a customer of Defendant. Plaintiff provided his PII to Defendant in order to obtain Defendant's services. Plaintiff received a Notice of Data Breach from Defendant informing him that his PII was involved in the Data Breach. Defendant has confirmed that Plaintiff's name, date of birth, and Social Security number were exposed in the Data Breach.

11. Defendant Baker Tilly Advisory Group, LP is, upon information and belief, a limited partnership organized under the laws of the State of Delaware, with its principal place of business in New York, New York. Defendant maintains offices in Manhattan, including at 66 Hudson Boulevard East, Suite 2200, New York, New York 10001.[4] In June 2026, Baker Tilly announced that it would establish New York City as its headquarters, and upon information and belief, Defendant's headquarters and principal place of business are in Hudson Yards in

[4] *See* Baker Tilly, *Baker Tilly Announces Agreement to Acquire Anchin; New York City to Become Firm Headquarters* (June 10, 2026), https://www.bakertilly.com/news/baker-tilly-announces-agreement-to-acquire-anchin; Baker Tilly, *Locations*, https://www.bakertilly.com/contact/offices (last visited Nov. 16, 2026).

Manhattan. Defendant provides tax, financial consulting, business advisory, cybersecurity advisory, and business management services to customers nationwide. Defendant maintained the information compromised in the Data Breach and issued the Notice to affected individuals.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) (the Class Action Fairness Act, or "CAFA") because: (a) there are 100 or more members in the proposed class; (b) the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs; and (c) at least one member of the proposed class is a citizen of a state different from Defendant. The aggregate claims of the Class Members, including compensatory damages, restitution, disgorgement, and the value of the injunctive and declaratory relief sought for the approximately 195,512 individuals affected by the Data Breach, exceed $5,000,000 in the aggregate, exclusive of interest and costs.

13. Defendant is a limited partnership. For purposes of CAFA, 28 U.S.C. § 1332(d)(10) provides that an unincorporated association is deemed to be a citizen of the state where it has its principal place of business and the state under whose laws it is organized. Defendant's principal place of business is in New York, and it is organized under Delaware law. Defendant is therefore a citizen of New York and Delaware under § 1332(d)(10). Plaintiff is a citizen of Tennessee, establishing minimal diversity.

14. This Court has personal jurisdiction over Defendant because Defendant maintains its headquarters and principal place of business in this District, regularly conducts substantial business in this District, and has sufficient minimum contacts with New York.

15. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (2) because Defendant resides and maintains its principal place of business in this District and, upon

information and belief, a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, including the direction of Defendant's data-security and vendor-management practices.

## FACTUAL ALLEGATIONS

***Defendant Collected, Maintained, and Stored Plaintiff's and Class Members' PII***

16. Baker Tilly is one of the largest tax and business advisory firms in the United States. Defendant's services include tax preparation and compliance, financial consulting, business advisory, cybersecurity advisory, and business management services.

17. In the course of providing these services, Defendant routinely collects, processes, stores, and maintains highly sensitive PII belonging to its customers, which its customers entrust to it. This PII includes full names, Social Security numbers, dates of birth, driver's license information, addresses, contact information, and financial information.

18. Tax and financial advisory services, by their nature, require the collection of the most sensitive identifiers that individuals possess. Customers who provide their information to Defendant typically have no practical alternative to providing their PII and no direct ability to control or monitor how Defendant stores, secures, shares with vendors, or disposes of it.

19. Defendant is subject to the data security requirements of the New York SHIELD Act, N.Y. Gen. Bus. Law § 899-bb, which requires any person or business that owns or licenses computerized data that includes private information of a New York resident to develop, implement, and maintain reasonable safeguards to protect the security, confidentiality, and integrity of that information—including by selecting service providers capable of maintaining appropriate safeguards and requiring those safeguards by contract.[5] Upon information and belief, Defendant,

---

[5] N.Y. Gen. Bus. Law § 899-bb(2).

as a provider of tax-preparation services, is also subject to the Federal Trade Commission's ("FTC") Standards for Safeguarding Customer Information under the Gramm-Leach-Bliley Act, 16 C.F.R. Part 314, which require financial institutions to oversee their service providers.

20. Defendant recognizes these duties. Its Privacy Policy declares: "We use a variety of safeguards to protect your Personal Information," and describes those safeguards as including physical measures (e.g., secure office entry), technical measures (e.g., password protection, network firewalls, laptop encryption, authentication mechanisms), and administrative measures (e.g., confidentiality agreements, training, procedures that limit access to and use of data).[6] The Privacy Policy further states that Defendant discloses information to "select third parties who perform services on our behalf" and that those service providers "are prohibited from using your information for other purposes."[7] Plaintiff and Class Members relied on these representations.

21. Defendant used Plaintiff's and Class Members' PII in its business to derive economic benefits. Defendant could not provide tax and advisory services to its customers without collecting and maintaining that PII. By obtaining, using, and benefitting from this PII, Defendant assumed legal and equitable duties to protect it from unauthorized access and disclosure—including when it chose to store or process that PII on platforms operated by third-party service providers.

***The Data Breach***

22. On or about September 2, 2026, cybercriminals obtained unauthorized access to information maintained by Defendant. According to the Notice, Defendant discovered a potential

[6] *See* Baker Tilly, *Online Privacy Policy*, https://www.bakertilly.com/baker-tilly-online-privacy-policy (last visited Nov. 16, 2026).
[7] *Id.*

cybersecurity incident on September 6, 2026, involving a platform operated by a third-party service provider.

23. Defendant has admitted that an unauthorized actor obtained data relating to its customers. Defendant completed its review of the affected data on October 28, 2026.

24. Defendant has confirmed that the PII compromised in the Data Breach includes names, dates of birth, and Social Security numbers, as it did in the Notice. Upon information and belief, the compromised PII also includes addresses, driver's license information, contact information, and financial information. The affected individuals include minors: Defendant issued a separate form of notice addressed to the parents or guardians of children whose personal information was involved. Defendant has disclosed that 111 Rhode Island residents were notified, and, upon information and belief, Defendant reported to the Office of the Texas Attorney General that 10,456 Texas residents were affected. In total, upon information and belief, the Data Breach affected approximately 195,512 individuals.

25. The Notice does not identify the third-party service provider or fully explain how cybercriminals obtained the affected information. Defendant has thus withheld information that Plaintiff and Class Members need to assess the full scope of the risk they face.

26. Even after discovering the Data Breach on September 6, 2026, Defendant waited until November 9, 2026—sixty-four days—to issue notice to affected individuals. Under New York law, notification must be made "in the most expedient time possible and without unreasonable delay" and "within thirty days after the breach has been discovered."[8] Defendant's sixty-four-day delay more than doubled this statutory deadline, depriving Plaintiff and Class

[8] N.Y. Gen. Bus. Law § 899-aa(2).

Members of the opportunity to begin mitigating the consequences of the Data Breach at the earliest possible time.

27. In the Notice, Defendant acknowledged the need for affected individuals to protect themselves from identity theft by advising them to "remain vigilant" and review account statements and credit reports for unauthorized activity. Defendant offered affected individuals twenty-four months of Experian IdentityWorks credit monitoring, identity restoration assistance, and identity theft insurance. As discussed below, this remediation is inadequate relative to the scope and duration of risk created by the compromise of immutable identifiers such as Social Security numbers.

28. Defendant claims that, since the Data Breach, it took containment measures, investigated with outside experts, notified law enforcement, and took steps intended to prevent similar incidents. Such generalized declarations are insufficient to ensure that Plaintiff's and Class Members' PII will be protected from additional exposure.

***Defendant's Data Security Obligations***

29. Defendant had a duty to implement and maintain reasonable data security practices to protect the PII it collected and stored, and to ensure that any third-party service provider to which it entrusted that PII did the same. This duty arose from multiple sources, including: (a) Defendant's voluntary undertaking to collect and store highly sensitive PII; (b) the special relationship between Defendant and the individuals whose PII it collected, who had no practical alternative to providing their data and no ability to monitor Defendant's or its vendors' security practices; (c) Defendant's representations in its Privacy Policy; (d) the FTC Act and the FTC's Safeguards Rule; and (e) the New York SHIELD Act's express requirement that businesses

maintaining private information of New York residents implement reasonable safeguards, including oversight of service providers.[9]

30. The FTC has long treated failures to implement reasonable data security measures as unfair acts or practices under Section 5 of the FTC Act.[10] Decades of FTC enforcement actions and guidance have established that reasonable data security is a settled regulatory expectation.[11] The FTC has published detailed guidance on the specific measures that constitute reasonable security, including limiting access to sensitive data, encryption, monitoring for suspicious activity, disposing of information that is no longer needed, and verifying that third-party service providers use reasonable security measures.[12]

31. The National Institute of Standards and Technology ("NIST") has published widely recognized catalogs of security and privacy controls—including supply chain and third-party risk management controls—that serve as objective benchmarks for reasonable security.[13] NIST has also published detailed guidance on incident response as a core component of cybersecurity risk management.[14]

32. The Center for Internet Security ("CIS") has published the CIS Critical Security Controls, which represent consensus industry best practices including asset inventory, data protection, access control, continuous vulnerability management, audit log management, service

[9] N.Y. Gen. Bus. Law § 899-bb.
[10] 15 U.S.C. § 45(a).
[11] *See* Fed. Trade Comm'n, *Data Security* (resource page), https://www.ftc.gov/business-guidance/privacy-security/data-security.
[12] *See* Fed. Trade Comm'n, *Start with Security: A Guide for Business* (June 2015); Fed. Trade Comm'n, *Protecting Personal Information: A Guide for Business* (Oct. 2016), https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_protecting-personal-information.pdf.
[13] *See* Joint Task Force, Nat'l Inst. of Standards & Tech., *Security and Privacy Controls for Information Systems and Organizations*, NIST Special Publication 800-53, Rev. 5 (Sept. 2020), https://doi.org/10.6028/NIST.SP.800-53r5.
[14] *See* Nat'l Inst. of Standards & Tech., *Incident Response Recommendations and Considerations for Cybersecurity Risk Management: A CSF 2.0 Community Profile*, NIST Special Publication 800-61, Rev. 3 (Apr. 2025), https://csrc.nist.gov/pubs/sp/800/61/r3/final.

provider management, network monitoring, incident response management, and penetration testing.[15]

33. The Cybersecurity and Infrastructure Security Agency ("CISA") has published guidance identifying cyberattacks as well-known, evolving threats and has recommended controls including backups, phishing resistance, patching, multifactor authentication, least privilege, network segmentation, logging, monitoring, and incident response planning.[16]

34. Upon information and belief, Defendant failed to meet the minimum standards of these widely accepted frameworks. Defendant's specific failures include, but are not limited to: (a) failing to adequately vet, contractually bind, audit, and monitor the third-party service provider whose platform was compromised; (b) entrusting more PII to that platform, and for longer, than was reasonably necessary; (c) failing to encrypt PII at rest and in transit; (d) failing to implement adequate access controls and multifactor authentication; (e) failing to deploy sufficient intrusion detection and monitoring systems capable of detecting unauthorized access and data exfiltration within a reasonable time; (f) failing to conduct regular security assessments and penetration testing; (g) failing to maintain adequate logging and monitoring; (h) failing to maintain an adequate incident response plan; (i) failing to adequately train its employees on cybersecurity; and (j) failing to delete PII that was no longer needed for legitimate business purposes.

***The Data Breach Was Foreseeable***

35. The risk of a data breach was well known and foreseeable to Defendant. Cyberattacks targeting companies that collect and store sensitive PII have been widely reported

---

[15] *See* Ctr. for Internet Sec., *CIS Critical Security Controls* (v8.1) (2024/2025), https://www.cisecurity.org/controls/v8-1.

[16] *See* Cybersecurity & Infrastructure Sec. Agency & Multi-State Info. Sharing & Analysis Ctr., *#StopRansomware Guide* (initial release Sept. 2020; updated Mar. 2025), https://www.cisa.gov/sites/default/files/2025-03/StopRansomware-Guide%20508.pdf.

and increasing in frequency. According to the Identity Theft Resource Center, in 2024 alone, 3,158 data compromises occurred, resulting in approximately 1,350,835,988 victim notices.[17]

36. Tax and financial advisory firms are particularly attractive targets for cybercriminals because they aggregate the precise combination of data—names, Social Security numbers, dates of birth, and financial information—needed to commit tax refund fraud, financial fraud, and identity theft for large numbers of individuals.

37. Defendant's knowledge of these risks is not speculative. Defendant itself markets cybersecurity services intended to protect the confidentiality, integrity, and availability of information, including third-party vendor risk management, vulnerability assessment, and cyber incident response planning.[18] Defendant therefore knew—better than most—that third-party platforms present a significant avenue of attack and that sensitive data entrusted to vendors must be carefully controlled and monitored.

38. The FTC has brought numerous enforcement actions against businesses for failing to adequately protect consumer data. These actions, and the resulting orders, were publicly available and put Defendant on notice of its obligations and of the consequences of failing to implement reasonable data security.

39. Despite the well-documented and foreseeable risk of a cyberattack, Defendant failed to take adequate measures to protect the PII entrusted to it.

***Defendant's Own Representations Regarding Data Security***

40. Defendant's Privacy Policy states that Defendant uses "a variety of safeguards to protect your Personal Information," including physical, technical, and administrative protections

---

[17] *See* Identity Theft Res. Ctr., *2024 Data Breach Report* (Jan. 2025), https://www.idtheftcenter.org/wp-content/uploads/2025/02/ITRC_2024DataBreachReport.pdf.
[18] *See* Baker Tilly, *Cybersecurity*, https://www.bakertilly.com/services/advisory/risk-advisory/cybersecurity (last visited Nov. 16, 2026).

such as password protection, network firewalls, laptop encryption, authentication mechanisms, confidentiality agreements, training, and procedures that limit access to and use of data.

41. Defendant also holds itself out to customers as an adviser on cybersecurity and third-party vendor risk management.

42. Despite these representations, Defendant permitted the PII of approximately 195,512 individuals to be exposed through a third-party platform that it selected and relied upon, and then waited more than two months to tell those individuals. Defendant's conduct was inconsistent with its own representations and fell below the applicable standard of care.

***Value of the Compromised PII and the Immutable Nature of Social Security Numbers***

43. Social Security numbers are among the most sensitive and valuable forms of PII. Unlike credit card numbers, which can be cancelled and reissued, Social Security numbers are generally immutable and cannot be easily replaced. Once compromised, a Social Security number can be used to commit identity theft, tax fraud, benefits fraud, employment fraud, financial fraud, and other crimes.[19]

44. It is no easy task to change or cancel a compromised Social Security number. An individual cannot obtain a new Social Security number without significant documentation and evidence of actual, ongoing misuse. Even when a new number is issued, credit bureaus and financial institutions can quickly link the new number to the old one, undermining the effectiveness of the change. The exposure of a Social Security number in a data breach therefore creates a risk that persists indefinitely.

45. The combination of names, dates of birth, and Social Security numbers compromised in the Data Breach provides cybercriminals with the essential building blocks

[19] *See* Soc. Sec. Admin., *Identity Theft and Your Social Security Number* (2018), https://www.ssa.gov/pubs/EN-05-10064.pdf.

needed to assume an individual's identity. This combination is particularly valuable on the dark web, where it can be packaged into "Fullz"—comprehensive identity profiles compiled by combining multiple data points from a single victim—and sold to other criminals for use in opening bank accounts, applying for credit, filing fraudulent tax returns, obtaining government benefits, and other schemes. Because Defendant is a tax firm, the risk of fraudulent tax filings using the stolen data is especially acute.

46. Misuse of stolen data may not be immediate. The FTC has recognized that identity thieves may hold stolen information for extended periods before exploiting it.[20] The U.S. Government Accountability Office has similarly recognized that stolen data may remain dormant for a year or more before misuse and can cause harm for years afterward.[21] Plaintiff and Class Members therefore face a substantial and ongoing risk of identity theft and fraud for years to come.

***Inadequacy of Defendant's Response***

47. Defendant's response to the Data Breach has been inadequate in multiple respects.

48. First, Defendant failed to prevent or timely detect the unauthorized access to the third-party platform on which it had placed Plaintiff's and Class Members' PII.

49. Second, after discovering the Data Breach on September 6, 2026, Defendant waited sixty-four days—until November 9, 2026—to issue notice to affected individuals, in apparent violation of the thirty-day statutory deadline under N.Y. Gen. Bus. Law § 899-aa(2). This delay further prolonged Plaintiff's and Class Members' exposure.

---

[20] *See* Ari Lazarus, Fed. Trade Comm'n, *How Fast Will Identity Thieves Use Stolen Info?* (May 24, 2017).
[21] *See* U.S. Gov't Accountability Off., *Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, GAO-07-737 (June 4, 2007), https://www.gao.gov/products/gao-07-737.

50. Third, the Notice does not identify the third-party service provider or explain how the unauthorized actor obtained access, hampering Plaintiff's and Class Members' ability to assess and respond to the full scope of risk.

51. Fourth, Defendant offered only twenty-four months of Experian IdentityWorks services, which include single-bureau credit monitoring of the Experian file, identity restoration assistance, and identity theft insurance. These services monitor only one of the three major credit bureaus and do nothing to prevent misuse of the stolen data, and a two-year term is wholly disproportionate to the indefinite duration of risk created by the compromise of immutable identifiers like Social Security numbers. The retail cost of adequate credit and identity theft monitoring can exceed $200 per year, representing a significant ongoing expense that Plaintiff and Class Members would not need to bear but for Defendant's failures.

52. To date, Defendant has done nothing beyond its inadequate credit monitoring offering to provide Plaintiff and Class Members with relief for the damages they have suffered.

## PLAINTIFF'S EXPERIENCE AND INJURIES

53. Plaintiff Jonithan Chapman is a customer of Defendant. As a condition of receiving Defendant's services, Plaintiff was required to provide, and did provide, his PII to Defendant, including his name, date of birth, and Social Security number.

54. Plaintiff received a Notice of Data Breach from Defendant at his home address in Cleveland, Tennessee. The notice confirmed that Plaintiff's name, date of birth, and Social Security number were exposed in the Data Breach.

55. Plaintiff trusted Defendant to use reasonable measures to protect his PII, including when Defendant entrusted that PII to third-party service providers. Plaintiff is careful about sharing his sensitive personal information.

56. Since the Data Breach, Plaintiff has experienced an increase in spam emails.

57. Plaintiff fears for the security of his PII. As a result of the Data Breach, Plaintiff has suffered and will continue to suffer anxiety, stress, and concern about the misuse of his personal information.

58. Plaintiff faces a substantial and ongoing risk of identity theft and fraud as a result of the exposure of his name, date of birth, and Social Security number in the Data Breach—the precise combination of identifiers needed to commit identity theft and tax fraud. Because Social Security numbers are immutable, this risk will persist indefinitely.

59. Plaintiff has spent and will continue to spend time and effort monitoring his financial accounts and credit reports for unauthorized activity, responding to the Data Breach notification, and taking other protective measures—valuable time he otherwise would have spent on work or personal activities. This time has been lost and cannot be recaptured.

60. Plaintiff further anticipates spending considerable time and money on an ongoing basis to mitigate and address harms caused by the Data Breach.

61. Plaintiff has a continuing interest in ensuring that his PII, which upon information and belief remains in Defendant's possession, is protected and safeguarded from further breaches.

## INJURIES AND DAMAGES SUFFERED BY PLAINTIFF AND CLASS MEMBERS

62. Plaintiff and Class Members are at a heightened risk of identity theft for years to come as a result of the Data Breach. Criminals who obtain PII through data breaches monetize the stolen information by selling it on the dark web to other criminals who use it to commit identity theft, open fraudulent accounts, file false tax returns, obtain government benefits, and engage in other fraudulent schemes.

63. Identity theft may go undetected for months or even years. Fraudulent tax returns are typically discovered only when a legitimate return is rejected. Fraudulent unemployment claims may not surface until law enforcement contacts the victim's employer. New-account fraud may not come to light until a debt collector contacts the victim. Plaintiff and Class Members will need to remain vigilant for years, and possibly their entire lives, as a result of Defendant's conduct.

64. PII has significant market value in both legitimate and illegitimate markets. By allowing the unauthorized exposure of Plaintiff's and Class Members' PII, Defendant caused a transfer of value to unauthorized third parties without any consideration paid to Plaintiff or Class Members.

65. Plaintiff and Class Members have spent and will continue to spend time on protective measures including placing fraud alerts and credit freezes, monitoring credit reports and financial accounts, reviewing account statements for unauthorized activity, contacting financial institutions, and researching the breach—measures consistent with Defendant's own instruction that affected individuals "remain vigilant."

66. Given the type of PII compromised—particularly Social Security numbers, which cannot be cancelled or reissued—and the indefinite duration of the risk created by their exposure, adequate identity theft monitoring will be necessary for a minimum of several years beyond the two years Defendant has offered. The retail cost of credit monitoring and identity theft protection services can exceed $200 per year. This is a reasonable and necessary cost that Plaintiff and Class Members would not need to bear but for Defendant's failure to safeguard their PII.

67. By providing their PII to Defendant as its customers, Plaintiff and Class Members reasonably expected that Defendant would use reasonable security measures to safeguard that information, including when Defendant shared it with service providers. Defendant's failure to do

so deprived Plaintiff and Class Members of the benefit of their bargain, as they received services of lesser value than they reasonably expected to receive.

## CLASS ACTION ALLEGATIONS

68. Plaintiff brings this action on behalf of himself and all others similarly situated, pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3), and proposes the following class:

> All customers of Baker Tilly Advisory Group, LP in the United States whose PII was compromised in the Data Breach involving Baker Tilly Advisory Group, LP occurring on or about September 2, 2026, including all individuals who received notice of the Data Breach.

69. Excluded from the Class are: (a) Defendant and its parents, subsidiaries, affiliates, partners, officers, and directors, and any entity in which Defendant has a controlling interest; (b) all judges assigned to hear any aspect of this litigation and their immediate family members; and (c) all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out.

70. Plaintiff reserves the right to amend the definition of the Class or to add subclasses if further information and discovery so warrant.

71. **Numerosity.** The members of the Class are so numerous that joinder of all members is impracticable. Upon information and belief, the Data Breach affected approximately 195,512 individuals. The Class is identifiable within Defendant's records, as Defendant has already identified affected individuals and sent them notice letters.[22]

72. **Commonality.** Common questions of law and fact predominate over any questions affecting individual members. Common questions include but are not limited to: (a) whether

[22] Fed. R. Civ. P. 23(a)(1).

Defendant owed a duty to protect the PII of Plaintiff and Class Members; (b) whether Defendant breached that duty by failing to implement reasonable data security measures, including reasonable oversight of its third-party service provider; (c) whether Defendant's conduct was negligent or negligent per se; (d) whether Defendant's breach caused the Data Breach; (e) whether Defendant adequately and timely notified Plaintiff and Class Members; (f) whether Defendant's remediation measures were adequate; (g) whether Plaintiff and Class Members suffered damages; and (h) whether Plaintiff and Class Members are entitled to injunctive and declaratory relief.[23]

73. **Typicality.** Plaintiff's claims are typical of the claims of Class Members because Plaintiff and Class Members were all subject to the same conduct by Defendant—Defendant's failure to implement and maintain reasonable data security measures, resulting in the compromise of their PII in the same Data Breach.[24]

74. **Adequacy.** Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has no interests antagonistic to or in conflict with those of the Class Members. Plaintiff has retained counsel experienced in prosecuting complex class actions, including data breach litigation, who will adequately represent the interests of the Class.[25]

75. **Predominance and Superiority.** Questions of law and fact common to the Class predominate over any questions affecting individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy. The damages suffered by individual Class Members are relatively small compared to the burden and expense of individual litigation, making it impracticable for most Class Members to individually redress the wrongs done to them. There will be no difficulty in managing this action as a class action.[26]

---

[23] Fed. R. Civ. P. 23(a)(2).
[24] Fed. R. Civ. P. 23(a)(3).
[25] Fed. R. Civ. P. 23(a)(4).
[26] Fed. R. Civ. P. 23(b)(3).

76. **Injunctive and Declaratory Relief.** Defendant has acted on grounds that apply generally to the Class, so that final injunctive and declaratory relief is appropriate respecting the Class as a whole.[27]

## CAUSES OF ACTION

### COUNT I
### NEGLIGENCE
*(On Behalf of Plaintiff and the Class)*

77. Plaintiff re-alleges paragraphs 1 through 77 as if same were fully set forth herein.

78. Defendant had full knowledge of the sensitivity of the PII entrusted to it and the types of harm that Plaintiff and Class Members could and would suffer if that PII were disclosed to unauthorized persons. Defendant is in the business of collecting, storing, and maintaining the most sensitive categories of personal data—Social Security numbers, dates of birth, and financial information—and, as a provider of cybersecurity advisory services, understood the risks associated with maintaining such data and with entrusting it to third-party platforms.

79. Defendant solicited, gathered, and stored the PII of Plaintiff and Class Members from its customers as part of the operation of its tax and business advisory business. Plaintiff and Class Members had no practical ability to protect their PII once it was in Defendant's possession or on the platforms of Defendant's chosen service providers.

80. Upon accepting and storing the PII of Plaintiff and Class Members, Defendant undertook and owed a duty to Plaintiff and Class Members to exercise reasonable care to secure and safeguard that information and to use reasonable and legally compliant methods to do so.

81. This duty arose from: (a) Defendant's voluntary undertaking to collect, store, and maintain highly sensitive PII, including Social Security numbers, as part of its business operations;

[27] Fed. R. Civ. P. 23(b)(2).

(b) the special relationship between Defendant and the individuals whose PII it collected, who entrusted Defendant with their confidential PII as a necessary part of obtaining Defendant's services and who had no ability to monitor Defendant's or its vendors' security practices; (c) Defendant's express representations in its Privacy Policy that it uses "a variety of safeguards to protect your Personal Information"; and (d) applicable regulatory frameworks and industry standards, including the FTC Act, the FTC Safeguards Rule, the New York SHIELD Act (N.Y. Gen. Bus. Law § 899-bb), FTC guidance, and the NIST, CIS, and CISA frameworks identified in the Factual Allegations above.

82. Defendant owed a duty to Plaintiff and Class Members to create and implement reasonable data security practices and procedures to protect the PII in its custody, including adequate computational and network security, encryption, intrusion detection and prevention systems, monitoring practices, access controls, multifactor authentication, and data retention and destruction policies.

83. Defendant owed a duty to Plaintiff and Class Members to exercise reasonable care in selecting, contracting with, auditing, and supervising its agents, contractors, vendors, and service providers—including the third-party service provider whose platform was compromised—and to share with and retain on those platforms only the PII reasonably necessary for legitimate business purposes.

84. Defendant owed a duty to Plaintiff and Class Members to implement processes by which it could detect in a timely manner whether PII had been exposed to unauthorized actors, to act upon data security warnings and alerts in a timely fashion, to disclose the Data Breach in a timely and accurate manner, and to comply with the notification requirements of N.Y. Gen. Bus. Law § 899-aa(2) and analogous state breach notification statutes.

85. Defendant breached its duties by failing to implement and maintain reasonable security practices and procedures to protect the PII in its possession. Defendant's specific negligent acts and omissions include, but are not limited to: (a) failing to adopt, implement, and maintain adequate security measures to safeguard Plaintiff's and Class Members' PII; (b) failing to exercise reasonable care in selecting, contracting with, auditing, and supervising the third-party service provider whose platform was compromised; (c) entrusting excessive PII to that platform and retaining it longer than necessary; (d) failing to encrypt PII at rest and in transit; (e) failing to implement adequate access controls and multifactor authentication; (f) failing to implement and maintain monitoring systems capable of detecting unauthorized access and exfiltration in a timely manner; (g) failing to maintain an adequate incident response plan; (h) failing to adequately train employees on cybersecurity protocols; (i) failing to delete PII that was no longer needed for legitimate business purposes; (j) failing to warn Plaintiff and Class Members of its inadequate data security practices; and (k) failing to provide reasonably timely notice of the Data Breach.

86. Had Defendant implemented data security and vendor-management measures consistent with the standards and frameworks identified herein, the Data Breach would have been avoided, or its resulting damage to Plaintiff and the Class would have been significantly reduced and the amount of PII compromised greatly lessened.

87. Defendant knew or should have known that its failure to exercise due care in collecting, storing, sharing, and securing the PII of Plaintiff and Class Members involved an unreasonable risk of harm to Plaintiff and Class Members, even if the harm occurred through the criminal acts of a third party, which criminal acts Defendant had good reason to anticipate in light of the well-known, widely reported, and increasing frequency of cyberattacks—and in light of Defendant's own expertise in cybersecurity and vendor risk.

88. Plaintiff and Class Members were the foreseeable and probable victims of Defendant's inadequate security practices. They are members of a well-defined, foreseeable, and probable class of individuals whom Defendant knew or should have known would suffer injury from Defendant's inadequate security practices.

89. But for Defendant's wrongful and negligent breaches of its duties, the Data Breach would not have occurred, Plaintiff's and Class Members' PII would not have been compromised, and their injuries would have been avoided.

90. Defendant further breached its duties by failing to provide reasonably timely notice of the Data Breach, which actually and proximately caused and exacerbated the harm from the Data Breach.

91. As a direct and proximate result of Defendant's negligence, Plaintiff and Class Members have suffered and will continue to suffer injuries and damages, including but not limited to: (a) invasion of privacy; (b) lost or diminished value of their PII; (c) actual or imminent identity theft and fraud; (d) lost opportunity costs associated with attempting to mitigate the consequences of the Data Breach, including lost time; (e) loss of benefit of their bargain; (f) anxiety, emotional distress, and loss of privacy; and (g) the continued and ongoing risk to their PII, which remains in Defendant's possession and subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect it.

92. Plaintiff and Class Members are entitled to compensatory, consequential, and nominal damages in an amount to be proven at trial.

93. Plaintiff seeks injunctive relief on behalf of the Class in the form of an order: (a) compelling Defendant to institute appropriate data security and vendor-management safeguards with regard to PII; (b) compelling Defendant to provide detailed and specific disclosure of what

types of PII have been compromised as a result of the Data Breach and how the compromise occurred; and (c) compelling Defendant to provide or extend credit monitoring and identity theft protection services to protect against the ongoing risk of harm.

**COUNT II**
**NEGLIGENCE PER SE**
*(On Behalf of Plaintiff and the Class)*

94. Plaintiff re-alleges paragraphs 1 through 77 as if same were fully set forth herein.

95. Under Section 5 of the FTC Act, 15 U.S.C. § 45, Defendant had a duty to use fair and adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' PII. Section 5 prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect PII. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendant's duty.

96. Similarly, the New York SHIELD Act, N.Y. Gen. Bus. Law § 899-bb, required Defendant to develop, implement, and maintain reasonable administrative, technical, and physical safeguards to protect the security, confidentiality, and integrity of private information, including by selecting service providers capable of maintaining appropriate safeguards and requiring those safeguards by contract. And N.Y. Gen. Bus. Law § 899-aa(2) required Defendant to notify affected persons in the most expedient time possible and without unreasonable delay, and within thirty days after discovery of the breach.

97. Defendant violated these statutes by failing to use reasonable measures to protect PII, failing to adequately oversee its third-party service provider, failing to comply with applicable industry standards as described herein, and failing to provide notice within thirty days of discovering the Data Breach. Defendant's conduct was particularly unreasonable given the nature

and amount of PII Defendant collected and stored and the foreseeable consequences of a data breach.

98. Plaintiff and Class Members are within the class of persons the FTC Act and the New York SHIELD Act were intended to protect, and the harm that has occurred is the type of harm those statutes were intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, because of their failure to employ reasonable data security measures, caused the same harm as that suffered by Plaintiff and Class Members.

99. Defendant's violations of these statutes constitute negligence per se or, alternatively, evidence of its negligence.

100. But for Defendant's violations, Plaintiff and Class Members would not have been injured. The injury and harm suffered by Plaintiff and Class Members was the reasonably foreseeable result of Defendant's violations.

101. As a direct and proximate result of Defendant's negligence per se, Plaintiff and Class Members have suffered and will continue to suffer the injuries and damages described herein, and are entitled to compensatory, consequential, and nominal damages in an amount to be proven at trial.

## COUNT III
## BREACH OF IMPLIED CONTRACT
*(On Behalf of Plaintiff and the Class)*

102. Plaintiff re-alleges paragraphs 1 through 77 as if same were fully set forth herein.

103. Defendant required Plaintiff and Class Members to provide and entrust their PII to Defendant, as a condition of receiving Defendant's tax and advisory services as Defendant's customers.

104. When Plaintiff and Class Members, as Defendant's customers, provided their PII to Defendant, they entered into implied contracts with Defendant pursuant to which Defendant agreed to safeguard and protect such PII using reasonable and legally compliant security measures, including when Defendant shared that PII with service providers.

105. Under the implied contracts, Defendant was obligated to: (a) provide tax and advisory services; (b) protect the PII provided in connection with those services from unauthorized access and disclosure; (c) maintain the privacy and confidentiality of the PII it collected; and (d) provide Plaintiff and Class Members with prompt and adequate notice of any unauthorized access to their PII. In exchange, Plaintiff and Class Members agreed to provide their PII and paid for Defendant's services.

106. Defendant's Privacy Policy further evidences the terms of the implied agreement. The Privacy Policy represents that Defendant uses "a variety of safeguards to protect your Personal Information," including password protection, network firewalls, laptop encryption, authentication mechanisms, confidentiality agreements, training, and procedures that limit access to and use of data. Defendant's adequate protection of Plaintiff's and Class Members' PII was a material aspect of these implied contracts.

107. Plaintiff and Class Members reasonably understood that a portion of the fees they paid to Defendant would be used to pay for adequate cybersecurity measures.

108. A meeting of the minds occurred when PII was provided as a condition of Defendant's services and Defendant accepted, retained, and used that PII.

109. Plaintiff and Class Members fully performed their obligations under the implied contracts when they provided their PII to Defendant and paid for Defendant's services.

110. Defendant materially breached its contractual obligations when Plaintiff's and Class Members' PII was disclosed without authorization in the Data Breach due to Defendant's inadequate data security and vendor-management measures, and when Defendant failed to notify them promptly of the Data Breach.

111. Had Defendant disclosed that its data security procedures were inadequate or that they did not adhere to applicable law or industry standards, neither Plaintiff, Class Members, nor any reasonable person would have provided PII to Defendant.

112. As a result of Defendant's failures to fulfill the data security protections promised, Plaintiff and Class Members did not receive the full benefit of their bargains with Defendant. As a direct and proximate result of Defendant's breach of the implied contracts, Plaintiff and Class Members have suffered injuries and damages as set forth herein and are entitled to compensatory, consequential, and nominal damages, and/or restitution, in an amount to be proven at trial.

**COUNT IV**
**UNJUST ENRICHMENT**
*(In the Alternative, On Behalf of Plaintiff and the Class)*

113. Plaintiff re-alleges paragraphs 1 through 77 as if same were fully set forth herein.

114. This Count is pled in the alternative to Count III.

115. Plaintiff and Class Members conferred a monetary and non-monetary benefit on Defendant. Specifically, they provided their PII to Defendant, and paid for Defendant's services. In exchange, Plaintiff and Class Members should have had their PII protected with adequate data security.

116. Defendant knew Plaintiff and Class Members conferred a benefit upon it and accepted and retained that benefit by accepting, retaining, using, and profiting from the PII

entrusted to it. Defendant could not provide its tax and advisory services without collecting and maintaining that PII.

117. Defendant enriched itself by saving the costs it reasonably should have expended on data security and vendor-oversight measures. Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendant chose to use cheaper, ineffective security measures. Plaintiff and Class Members suffered as a direct and proximate result of Defendant's decision to prioritize its own profits over the security of their PII.

118. Under principles of equity and good conscience, it would be unjust for Defendant to be permitted to retain any of the benefits that Plaintiff and Class Members conferred upon it. Plaintiff and Class Members have no adequate remedy at law.

119. Plaintiff and Class Members are entitled to full restitution and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Defendant as a result of its wrongful conduct, in an amount to be determined at trial.

**COUNT V**
**DECLARATORY AND INJUNCTIVE RELIEF**
*(On Behalf of Plaintiff and the Class)*
*28 U.S.C. §§ 2201–2202*

120. Plaintiff re-alleges paragraphs 1 through 77 as if same were fully set forth herein.

121. Pursuant to 28 U.S.C. §§ 2201–2202, the Court may declare the rights of the parties and grant further necessary or proper relief in any case of actual controversy within its jurisdiction.

122. An actual controversy exists between the parties regarding Defendant's ongoing obligations to protect the PII of Plaintiff and Class Members, including PII shared with third-party service providers, and to provide adequate remediation for the Data Breach.

123. Plaintiff's and Class Members' PII remains at risk. Defendant has already demonstrated that its data security and vendor-management practices are inadequate to prevent

unauthorized access to the PII entrusted to it. Upon information and belief, that PII remains in Defendant's possession and on systems, including third-party systems, that have been shown to be vulnerable to compromise.

124. The ongoing risk to Plaintiff's and Class Members' PII is not speculative—it is concrete, particularized, and traceable to Defendant's conduct. Social Security numbers cannot be cancelled or replaced in the way a credit card number can, and the risk of identity theft arising from their exposure persists indefinitely.

125. Defendant's existing remediation measures are inadequate. Defendant has offered only twenty-four months of Experian IdentityWorks services, which monitor a single credit bureau and expire long before the risk created by the compromise of Social Security numbers abates.

126. Plaintiff seeks a declaration that: (a) Defendant owes ongoing duties to Plaintiff and Class Members to implement and maintain reasonable data security practices, including reasonable oversight of service providers, sufficient to protect their PII from further unauthorized access; (b) Defendant's existing remediation measures are inadequate to compensate for or protect against the ongoing risks created by the Data Breach; and (c) Plaintiff and Class Members remain at substantial and imminent risk of identity theft and fraud as a result of the Data Breach.

127. Plaintiff further seeks injunctive relief requiring Defendant to: (a) implement and maintain reasonable data security practices sufficient to protect the PII in its possession, consistent with the standards and frameworks identified herein; (b) implement a reasonable third-party vendor risk management program, including due diligence, contractual safeguards, audits, and data minimization for vendors that receive PII; (c) engage independent third-party security auditors to conduct regular assessments of Defendant's data security practices and to report their findings; (d) implement and fund a comprehensive program of identity protection and restoration services for

Plaintiff and all Class Members for a period commensurate with the risk created by the Data Breach; and (e) destroy all PII that Defendant no longer has a reasonable business or legal need to maintain, and require its service providers to do the same.

128. Unless a class-wide injunction is issued, Defendant may continue in its failure to properly secure the PII of Class Members and may continue to refuse to provide adequate remediation. A judicial declaration and injunctive relief are necessary and appropriate because Defendant has demonstrated that it cannot be relied upon to adequately safeguard the PII entrusted to it.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, respectfully requests that this Court enter judgment against Defendant and grant the following relief:

A. An order certifying the Class as defined herein, appointing Plaintiff as Class Representative, and appointing Plaintiff's counsel as Class Counsel;

B. An award of compensatory, consequential, and nominal damages to Plaintiff and the Class in an amount to be determined at trial;

C. An award of restitution and disgorgement of the benefits unjustly retained by Defendant;

D. Injunctive relief requiring Defendant to: (i) implement and maintain reasonable data security practices sufficient to protect the PII in its possession from further unauthorized access; (ii) implement a reasonable third-party vendor risk management program; (iii) engage independent third-party security auditors to conduct annual assessments and report to the Court; (iv) implement a comprehensive program of identity protection and restoration services for Plaintiff and Class Members for a period commensurate with the

risk created by the Data Breach; and (v) destroy all PII that Defendant no longer has a reasonable business or legal need to maintain;

E. Declaratory relief as set forth in Count V;

F. An award of reasonable attorneys' fees, costs, and expenses;

G. Pre-judgment and post-judgment interest to the maximum extent allowable; and

H. Such other and further relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff, individually and on behalf of the Class, hereby demands a trial by jury on all issues so triable.

Dated: November 17, 2026

Respectfully submitted,

By: */s/ Robert Jimenez*
Robert Jimenez (NY Reg. No. 5814249)
**BRYSON HARRIS SUCIU & DEMAY PLLC**
201 Sevilla Avenue, Suite 200
Coral Gables, Florida 33134
Tel.: (786) 206-7896
rjimenez@brysonpllc.com
lblanco@brysonpllc.com

*Counsel for Plaintiff and the Putative Class*